IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

LAURIE ANN SPILKER,

Debtor(s).

HEARTLAND BANK,

Plaintiff(s)

vs.

LAURIE ANN SPILKER; GREG SPILKER;
and THE FARMERS COOPERATIVE,

Defendants(s).

CASE NO. BK 25-41113-TLS

CHAPTER 13

ADV. NO. A26-4003-TLS

**ORDER**

This matter is before the court on the plaintiff's motion for summary judgment (Fil. No. 10). No resistance has been filed. Richard P. Garden, Jr., represents Heartland Bank; Jonathan J. Lederer represents Farmers Cooperative; and the Spilker defendants are pro se. The plaintiff filed evidence and a brief, and pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7007-1, the motion was taken under advisement without oral arguments.

The motion is granted.

Heartland Bank filed this adversary proceeding to determine the validity, priority, and extent of liens and interests in checks representing the proceeds of grain in which the bank and the defendants claim competing interests. The bank now moves for summary judgment in its favor finding that it holds a perfected security interest of first priority in the farm products of the debtor and her husband, including three checks issued in December 2025 for grain sold by the debtor and her husband.

Laurie Spilker and Greg Spilker executed two promissory notes to Heartland Bank in 2024. Loan No. XX012 was a one-year operating line of credit in the principal amount of $500,000. Semi-annual interest payments were to begin on October 1, 2024, with payment of the principal and interest due April 1, 2025. Loan No. XX449 was made on September 20, 2024, and consolidated three other notes. A single payment of the principal amount of $427,400 plus interest was due January 15, 2025. Both notes were secured by a blanket agricultural security agreement signed by both Spilkers on April 12, 2024, and the consolidation loan was additionally secured by two deeds of trust on a parcel of farmland. The bank filed U.C.C. financing statements to perfect its liens. Heartland Bank also is the assignee of a judgment in favor of PHI Financial Services, Inc., against Greg Spilker of approximately $123,000 plus interest.

The Spilkers defaulted on those loans. Greg Spilker filed a Chapter 12 bankruptcy petition on April 23, 2025.[1] Heartland Bank moved for relief from the automatic stay for cause, alleging Greg Spilker had failed to account for certain collateral, failed to maintain insurance on collateral, failed to protect certain collateral, and permitted Laurie Spilker to sell collateral and divert the proceeds to her separate bank account. The motion was granted on June 30, 2025. Thereafter, Heartland Bank filed a motion to dismiss the Chapter 12 case for cause, asserting Greg Spilker had failed to timely file a plan, failed to account for the bank's collateral, and lacked a reasonable likelihood of rehabilitation because secured creditors had exercised their rights in his machinery[2] and farmland. The court granted the motion and dismissed the case on January 8, 2026.

After obtaining relief from the automatic stay in Greg Spilker's case, Heartland Bank scheduled trustee's sales of the real estate collateral for October 20, 2025. Laurie Spilker then filed a Chapter 13 bankruptcy petition on October 15, 2025. Heartland Bank immediately moved for relief from stay to permit it to move forward with exercising its rights in its collateral, particularly as to the sale of the real estate. The court granted the motion to the extent of allowing the bank to sell a quarter-section of real estate owned only by Greg Spilker, and set the rest of matters raised in the motion for trial. Heartland Bank and Laurie Spilker then settled the remainder of the motion for relief, with the debtor agreeing to maintain property and casualty insurance on the bank's collateral and to ensure that Heartland Bank was named as an additional payee for any farm products sold. The court approved this stipulation on December 15, 2025.

The trustee's sale of Greg Spilker's 160 acres and irrigation equipment, along with grain sale proceeds turned over to the bank in December 2025, reduced the balance due on the notes to $237,376.75 as of March 3, 2026, plus interest of $17.43 accruing each day.[3]

As noted, Heartland Bank became aware that Laurie Spilker had been using a separate bank account to circumvent the bank's security interests and was refusing to turn over grain checks representing proceeds of the sale of the bank's collateral. Laurie Spilker also claimed an interest in farm equipment used in the family's farming operation, and she claimed an interest in the center pivot irrigation equipment on the land previously owned by Greg Spilker and sold as part of the trustee's sale. Heartland Bank filed another motion for stay relief (Fil. No. 102), which was set for

---

[1] The bankruptcy case was filed with the assistance of counsel, although counsel withdrew in July due to "a fundamental breakdown as to course, aims and progression of this case" between the debtor and counsel. *See* Mot. to Withdraw (Fil. No. 32). The debtor did not have the benefit of legal counsel for the remainder of his case.

[2] Greg Spilker testified at his § 341 meeting that his wife did not own any of the farm equipment, and no evidence has been presented to show that Laurie holds an ownership interest in the farm equipment.

[3] The balance of the PHI judgment debt against Greg as of that date was $216,283.22, plus interest accruing at $50.539 per day. The bank also asserts approximately $70,000 of unreimbursed attorneys' fees as of that date that are secured by the security agreement.

trial along with the debtor's amended plan and objections thereto. Prior to trial, Heartland Bank and Laurie Spilker reached a stipulation to grant the motion for relief as to the irrigation equipment.

In the meantime, other motions were filed in Laurie Spilker's bankruptcy case, including the Chapter 13 Trustee's motion to dismiss for failure to make plan payments and the debtor's motion for use of cash collateral for the farming operation and for living expenses. The cash collateral motion requested permission to use proceeds from the sale of grain in the Spilkers' possession produced in the 2023 and 2024 crop years, as well as proceeds from the sale of the 2025 crops after payment to alleged priority lienholders. Laurie Spilker stated in the motion that she held checks totaling $147,168.80 made out to the Spilkers and various parties with an interest in the 2025 crops.[4] She stated that she intended to use some of the cash collateral to pay rent, input costs, and harvest costs for the 2025 crops.

Heartland Bank objected to the motion to use cash collateral, arguing that the purported input and harvest creditors were not listed in Laurie Spilker's bankruptcy schedules, do not have an interest in the crop proceeds, are unsecured creditors of Greg Spilker, and would receive preferential payments if the motion were granted. The bank characterized the motion as a further example of the Spilkers claiming that Laurie has an interest in Greg's farming operation to frustrate and delay creditors.

After some continuances,[5] trial on the pending motions was held. On March 5, 2026, the court denied confirmation of the debtor's amended plan, denied the debtor's cash collateral motion, granted the motions for relief filed by Heartland Bank and AgDirect/Farm Credit Services of America (which held a security interest in certain farm equipment owned by Greg Spilker), and granted the Chapter 13 Trustee's motion to dismiss the case. *See* Fil. No. 250. Specifically, the court found that the Chapter 13 case was filed in bad faith, the debtor could not claim a marital interest in her husband's assets after having gone to great lengths to keep their assets separate in Greg's Chapter 12 case, proceeds from the sale of the bank's collateral had been diverted both pre- and post-petition, and there was no evidence the debtor's Chapter 13 plan would be funded by anything other than the bank's cash collateral and speculative recovery of accounts receivable.

Before the Chapter 13 case was dismissed, Heartland Bank filed this adversary proceeding to recover the grain proceeds checks being held by the debtor. The checks from ADM were payment for soybeans: a check for $56,868.13 was made payable to Greg Spilker, Farmers Cooperative, and Heartland Bank on December 11, 2025; a check for $44,246.20 was made payable to Laurie Spilker and Heartland Bank on December 11, 2025; and a check for $46,054.47 was made payable to Greg Spilker, Farmers Cooperative, and Heartland Bank on December 18, 2025.

---

[4] These seem to be the three checks at issue in this adversary proceeding.

[5] The debtor's attorney withdrew from the case for health reasons, and she has proceeded without legal counsel.

In her answer, the debtor states that Heartland Bank had no input into the 2025 crops and its lien would be inferior to input providers, including Greg Spilker; Heartland Bank "wrongfully sold 2025 crops, took money for the bank, gave [the Spilkers] no credit, and deprived prior lien holders of payment"; and the debtor and her husband intend to use the 2025 crop proceeds to plant the 2026 crop and pay the bank through a bankruptcy plan.[6]

The debtor did not provide any evidence or argument in opposition to the summary judgment motion.

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

> [I]f the moving party meets its burden, the party opposing the motion must establish a genuine factual issue. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013). The party opposing the motion may not rest on mere allegations or pleading denials, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010), or "merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoted in *Residential Funding*, 725 F.3d at 915). Instead, the party opposing the motion must substantiate its allegations with admissible, probative evidence that would permit a finding in its favor on more than speculation or conjecture. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoted in *Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1190-91 (8th Cir. 2014)); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

*Hansmeier v. McDermott (In re Hansmeier)*, 558 B.R. 299, 302 n.7 (B.A.P. 8th Cir. 2016).

Although the defendants, by their failure to respond, have not put any factual issues in dispute, summary judgment is not guaranteed to the plaintiff. The bank bears the burden of proof on its claims at trial, so it "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in [its] favor," *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), such that no reasonable fact-finder could find in favor of the defendants.

Here, the Spilkers have not put forth any evidence or legal support for their position. The bank's financing documents and security agreements give the bank rights to all proceeds from the sale of any collateral, including all crops "grown, growing, or to be grown." In light of the dismissal of the Spilkers' bankruptcy cases and the orders granting relief from the automatic stay

---

[6] This intended use of the grain proceeds differs from the debtor's proposed use of the proceeds as stated in her cash collateral motion.

to Heartland Bank, the Spilkers have no rights to the soybean proceeds and are directed to sign the checks[7] over to Heartland Bank.

Defendant Farmers Cooperative filed an answer to the complaint generally denying the allegations, but it has not submitted a response to the summary judgment motion. It filed a proof of claim in the bankruptcy case for $85,942.08 asserting "a lien pursuant to Neb. Rev. Stat. § 52-1101 et seq. on all crops produced on land on which the fertilizer/ag chemicals . . . was applied in 2024 and 2025 and proceeds therefrom[.]" The record does not indicate a basis for elevating this lien above Heartland Bank's lien, so Neb. U.C.C. § 9-322 gives the bank's prior perfected security interest priority over the cooperative's lien.

IT IS ORDERED: Heartland Bank's motion for summary judgment (Fil. No. 10) is granted. Heartland Bank holds a perfected security interest of first priority in the ADM checks dated December 11, 2025, and December 18, 2025 (or their replacements). The defendants are ordered to endorse and turn over to Heartland Bank the ADM checks dated December 11, 2025, and December 18, 2025 (or their replacements). Separate judgment will be entered.

Date: 3/26/2026

BY THE COURT:

/s/ Thomas L. Saladino
Bankruptcy Judge

Notice given by the court to:
     *Richard P. Garden, Jr.
     Jonathan J. Lederer
     Laurie Ann Spilker
     Gregory Spilker
     United States Trustee

*Movant is responsible for giving notice to other parties if required by rule or statute.

---

[7] The checks each carry the notation that they are void after 90 days. More than 90 days have passed since those checks were issued, so they may need to be reissued in order to be honored. If so, the defendants are directed to endorse the reissued checks and turn them over to Heartland Bank.